IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAKOTA PARSONS, and DENICE PARSONS, | ) | 8:14CV207 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| BLANE MCCANN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before me on five Motions to Dismiss. (Filings 26, 28, 30, 37, and 39.)  As set forth below, I will grant the Motions to Dismiss.  However, I will also provide Plaintiffs with the opportunity to file an amended complaint.

## I.  PLAINTIFFS' COMPLAINT

Dakota Parsons ("Dakota") and his mother Denice Parsons ("Denice" or "Dakota's Mother") filed their Complaint in this matter on July 18, 2014.  (Filing 1.)  In the Complaint, Plaintiffs allege numerous claims stemming from an incident at Westside High School ("WHS") that occurred following a band concert on October 25, 2012.  (*Id.* at CM/ECF p. 3.)  Dakota, who was a student at WHS, threw a firecracker out of a door following the concert.  (*Id.*)  The firecracker exploded on the pavement.  (*Id.*)  Although no one was injured, Dakota's backpack was searched and it contained materials to make another firecracker, or exploding device, and marijuana.  (*Id.*)  Police subsequently searched Plaintiffs' home, allegedly finding additional marijuana in Dakota's room.  (*Id.*)  Dakota was arrested and charged with

Possession with Intent to Distribute Marijuana, Unlawful Possession of Explosive Materials, and Possession of a Destructive Device. (*Id*.; *see also* Filing 32-3.)[1]

After his arrest, and after an administrative hearing, Dakota was informed that he would be expelled from school until January 2014. (Filing 1 at CM/ECF p. 4.) Dakota appealed the decision, and his term of expulsion was reduced to the remainder of the 2012-2013 school year. (*Id*.) On November 30, 2012, Defendant Blane McCann ("McCann"), Westside Community Schools Superintendent, sent a certified letter to Dakota's Mother confirming that he would be expelled for the remainder of the 2012-2013 school year. (*Id*. at CM/ECF p. 5.)

On June 17, 2013, Dakota appeared before a district judge in charge of the Young Adult Court ("YAC"). (*Id*. at CM/ECF p. 6.) He entered a plea of no contest to Unlawful Possession of Explosive Materials in the First Degree, a class IV felony. (*Id*.; *see also* Filings 32-3, 32-4.) Dakota was found suitable for the YAC and signed a court order and agreement to participate in the YAC program. (*Id*.) This program imposed a number of conditions upon Dakota that he agreed to follow. (*Id*.) One of the conditions specifically states: "Do not associate with anyone who possesses firearms, ammunition or illegal weapons. You shall not possess firearms, *ammunition* or illegal weapons." (Filing 32-4 at CM/ECF p. 1.) The agreement also provided that "any violation of the above conditions is cause for revocation of participation in the Young Adult Court and a sentence to confinement." (Filing 1 at CM/ECF p. 2.) In

---

[1]Defendant Mark Foxall ("Foxall") has filed state court records associated with these state court proceedings in support of his Motion to Dismiss. (*See* Filing 32.) I may consider these documents because they are embraced by Plaintiffs' Complaint (*see* filing 1) and are part of the public record. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("When considering . . . a motion to dismiss under Fed. R. Civ. P. 12(b)(6)[ ], the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." (internal quotations omitted)).

addition, because Dakota was a minor, a 90-day YAC incarceration period was waived and he was required to wear an ankle monitor until he turned 18. (*Id*. at CM/ECF p. 6.)

On July 10, 2013, Dakota turned 18 and his ankle monitor was removed. (*Id*.) Dakota continued to progress through the YAC program and, after meeting with a WHS guidance counselor, began completing online coursework. (*Id*. at CM/ECF p. 7.)

On July 25, 2013, the police came to the Parsons' residence because they had received a report that Dakota had been observed "making explosives." (*Id*.) The police conducted a search of the home and removed some "unusable fireworks from the garage." (*Id*.)

On August 2, 2013, Nick Lurz ("Lurz") of the YAC conducted a visit and search of Plaintiffs' home. (*Id*. at CM/ECF p. 8.) Lurz found some airsoft guns and pellets. (*Id*.) Dakota's Mother agreed to remove these items from the home. (*Id*.)

On August 12, 2013, Dakota was scheduled to take a final educational test, which was necessary for him to return to WHS. (*Id*.) However, on that same day, Dakota was arrested and jailed in the Douglas County Corrections Center ("DCC"). (*Id*. at CM/ECF p. 9.) Plaintiffs allege that Dakota was arrested without probable cause and without a valid warrant because the warrant indicated that he had violated "probation," but had never been placed on probation. (*Id*.) He also asserts that the warrant is invalid because it is not supported by an affidavit. (*Id*.)

On October 17, 2013, Dakota had his first hearing regarding the August 12, 2013, arrest. (*Id*. at CM/ECF p. 10.) During the hearing, the court ordered a psychological examination and Dakota continued to be held without bond. (*Id*.) Thereafter, additional hearings were held, and Dakota was ultimately released on March 5, 2014, on his own recognizance. (*Id*. at CM/ECF pp. 10-12.) Plaintiffs

allege that Dakota was unlawfully arrested and falsely imprisoned for a total of 203 days. (*Id*. at CM/ECF p. 13.) As a result, Dakota is suffering from "PTSD" and other "ongoing psychological ill effects." (*Id*.) Further, Dakota asserts that Westside Community Schools refuses to allow him to complete his education and graduate. (*Id*.)

Plaintiffs seek monetary damages, punitive damages, the return of all personal property confiscated from Plaintiffs' home, costs, attorney's fees, and other relief as may be appropriate. (*Id*. at CM/ECF pp. 24-25.)

## II. PROCEDURAL BACKGROUND

Between September 29, 2014, and October 21, 2014, Defendants McCann, Executive Director of Westside Schools Kent Kingston ("Kingston"), Westside Community Schools, Douglas County Attorney's Office, DCC Director Foxall, Bob Blanchard and Lurz moved to dismiss Plaintiffs' claims against them. (Filings 26, 27, 28, 29, 30, 31, 32, 33, and 34.) However, Plaintiffs subsequently moved to voluntarily dismiss Blanchard and Lurz, and I granted the motion. (Filings 43 and 44.) Plaintiffs' claims against Blanchard and Lurz have been dismissed from this matter without prejudice. (Filing 44.)

On October 22, 2014, Defendants City of Omaha, the Omaha Police Department ("OPD"), Douglas County, Nebraska ("Douglas County"), Douglas County Attorney Brenda Beadle ("Beadle"), and Douglas County Attorney Don Kleine ("Kleine") also moved to Dismiss Plaintiffs' claims. (Filings 37, 38, 39 and 40.) On November 17, 2014, Plaintiffs filed a Brief in Opposition to the pending Motions to Dismiss. (Filing 41.) Defendants have filed Reply Briefs. (Filings 42, 48, 49, 50 and 51.) All of the remaining Motions to Dismiss are now ripe for a decision.

4

## III.  ANALYSIS

In their Complaint, Plaintiffs allege federal claims against multiple Defendants. In particular, Plaintiffs allege (1) a 42 U.S.C. § 1983 false arrest claim against Beadle, Kleine, the Douglas County Attorney's Office, Douglas County, OPD, the City of Omaha, McCann and Westside Community Schools, (2) a section 1983 wrongful search and seizure claim against Douglas County, OPD, and the City of Omaha, (3) a section 1983 claim for unlawful imprisonment against Foxall, Beadle, Kleine, and Douglas County, (4) an Equal Protection claim against McCann for refusing to allow Dakota to attend Westside High School, (5) a section 1983 civil conspiracy claim against all Defendants, and (6) an Eighth Amendment claim against Beadle for requesting that Dakota be held without bond.  (Filing 1 at CM/ECF pp. 13-24.) Defendants have filed separate Motions and Briefs arguing, among other things, that Plaintiffs' allegations fail to state a claim upon which relief may be granted.  (Filings 26, 27, 28, 29, 30, 31, 37, 38, 39, 40.)  For the reasons discussed below, I agree with Defendants.

### A.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  This "plausibility standard" is not one of *probability*, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Where a complaint contains facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Twombly*, 550 U.S. at 557 (brackets omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

## B.   Municipal Policy

In the Complaint, Plaintiffs have named the Douglas County Attorney's Office, Douglas County, OPD, the City of Omaha, and Westside Community Schools. (Filing 1.) Collectively, any claims against these named Defendants amount to claims against three municipal entities: Douglas County, the City of Omaha, and Westside Community Schools. Plaintiffs also allege claims against individual employees of these municipal entities in their official capacities. (*See Id.* at CM/ECF pp. 1-2.) Specifically, Plaintiffs name McCann, Kingston, Kleine and Foxall in their official capacities.[2] (*Id.* at CM/ECF p. 1.) Claims against individual employees of municipalities in their official capacities are actually claims against their employers. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. . . .

---

[2]Because Plaintiffs did not specify whether they were suing Kleine and Foxall in their individual capacities (*see* filing 1 at CM/ECF p. 1), I must assume Kleine and Foxall are sued in their official capacities only. *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.") (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)).

A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity . . . .").

A municipality can be liable only if a municipal "policy or custom" caused a plaintiff to be deprived of a federal right.  *L.A. Cnty. v. Humphries*, 562 U.S. 29, 32 (2010); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish a claim for "custom" liability, Plaintiffs must allege facts to show:

> 1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Thelma D. ex rel. Delores A. v. Bd. of Educ. of St. Louis*, 934 F.2d 929, 932–33 (8th Cir. 1991) (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990)).

Here, Plaintiffs have not alleged facts to suggest a continuing, widespread, persistent pattern of unconstitutional misconduct by any of the municipalities' employees with regard to any of their claims.  Plaintiffs allege that Defendants' "policies, customs and practices . . . were a proximate cause of the" alleged constitutional violations.  (Filing 1 at CM/ECF pp. 15, 17, and 19.)  However, Plaintiffs have not described a specific policy, custom or practice, nor have they alleged facts to suggest that any policies, customs or practices are "widespread."  (*See* Filing 1.)

In light of this, Plaintiffs' federal claims against the Douglas County Attorney's Office, Douglas County, OPD, the City of Omaha, Westside Community Schools, and Plaintiffs' official capacity claims against McCann, Kingston, Kleine and Foxall, are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See e.g., Triemert v. Wash.Cnty., No. 13-cv1312 (PJS/JSM), 2013 WL 6729260 (D. Minn. Dec. 19, 2013)* (dismissing *Monell* claims because there were no factual allegations describing any specific policy, custom or practice that was established by any particular defendant); *See also Spiller v. City of Tex. City, Police Dep't, 130 F.3d 162, 167 (5th Cir.1997)* ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.").

## C.   Individual Capacity Claims

As discussed above, all of Plaintiffs' official capacity claims have been dismissed.   Plaintiffs' only remaining federal claims are those alleged against McCann, Kingston, and Beadle in their individual capacities.   (*See* Filing 1 at CM/ECF p. 1.)

### 1.   Fourth and Fourteenth Amendment Claims Related to Dakota's Arrest

Dakota has asserted Fourth and Fourteenth Amendment claims against McCann, Kingston, and Beadle stemming from his August 12, 2013, arrest. (*Id.* at CM/ECF pp. 9, 14.)  "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986).*

Here, Dakota asserts that the bench warrant used for his arrest was invalid because it says "Violation of Probation," when he was not actually on probation. (Filing No. 1 at CM/ECF p. 9.)  He also asserts that the warrant is invalid because it

is not supported by an affidavit.  (*Id*.)  However, as alleged, Dakota's Fourth and Fourteenth Amendment claims against McCann, Kingston, and Beadle fail for numerous reasons.

First, Dakota fails to explain how the conditions imposed in the YAC court order and agreement were unlike probation.  Indeed, this program imposed a number of conditions upon Dakota that he agreed to follow.  (*Id*. at CM/ECF p. 6; *see also* Filings 32-3, 32-4.)  The court order and agreement also provided that "any violation of the . . . conditions is cause for revocation of participation in the Young Adult Court and a sentence to confinement."  (Filing 32-4 at CM/ECF p. 2.)  In light of this, Dakota has not alleged facts sufficient for the court to reasonably infer that the words "Violation of Probation" caused the warrant to be invalid.

Second, courts have held that in the context of probation violations, probation officers need not establish a violation in order to obtain an arrest warrant.  *See, e.g., United States v. Basso*, 632 F.2d 1007, 1013 (2d Cir. 1980) (analyzing the due process protections of a probationer and concluding a "showing of reasonably satisfactory proof of cause" is sufficient to establish a violation of probation, and it may be less than is required for a search warrant because the arrested probationer can have a hearing to determine whether probable cause exists to believe that he had violated probation).  As discussed above, the YAC court order and agreement imposed conditions similar to probation.  One of the conditions specifically states: "Do not associate with anyone who possesses firearms, ammunition or illegal weapons. You shall not possess firearms, *ammunition* or illegal weapons." (Filing 32-4 at CM/ECF p. 1.)  Plaintiffs' factual allegations state that the police responded to a report that Dakota was "making explosives" on July 25, 2013, and located some "unusable fireworks from the garage."  (Filing 1 at CM/ECF p. 7.)  They also state that Lurz found some airsoft guns and pellets in their home on August 2, 2013.  (*Id*.)  Dakota does not deny that he was making explosives on July 25, 2013, nor does he state that no reasonably satisfactory proof of cause existed for the arrest warrant.  In addition, he does not allege that he requested, or did not waive, a probable cause hearing to

determine whether probable cause existed after he was arrested.  Further, Dakota has not alleged that the bench warrant was determined to be invalid during hearings that were held at the State court level.

Third, Dakota speculates that he was arrested solely for the purpose of preventing his return to WHS and that McCann "or some other agent of Westside Community Schools" requested his arrest.  (*Id.* at CM/ECF p. 14.)  However, Dakota does not allege that McCann, Kingston, or Beadle misrepresented any facts, fabricated a violation of his YAC conditions, or submitted false statements or affidavits. Speculation that McCann urged the police to arrest him, without more, does not give rise to liability under § 1983.  *See, e.g.*, *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) (concluding only those who participate in or cause a constitutional deprivation are subject to § 1983 liability); *see also Twombly*, 550 U.S. at 555 (concluding a complaint fails to state a claim upon which relief may be granted if the factual allegations are not sufficient to raise a right to relief above the speculative level).

Fourth, Dakota has not alleged facts for the court to reasonably infer that Beadle requested the bench warrant.  However, if she had, Beadle is entitled to absolute prosecutorial immunity for such an act.  *See, e.g. Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 712 (9th Cir. 2010) (concluding where a prosecutor sought a bench warrant for an arrest following a probation violation, the prosecutor was entitled to absolute prosecutorial immunity.)

Fifth, even if the bench warrant was not supported by probable cause, Dakota's Fourth and Fourteenth Amendment claims regarding his arrest lack merit.  *See, e.g.*, *Perez v. Gamez*, No. 1:13-cv-1552, 2013 WL 6182038, at *5 (M.D. Pa. Nov. 25, 2013) (explaining that probable cause for arrest exists when a defendant is named in a facially valid bench warrant, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid); *Luckes v. Cnty. of Hennepin*, 415 F.3d 936, 939 (8th Cir. 2005) ("Because Luckes was

named in a valid bench warrant, however, probable cause for his arrest pursuant to that warrant was established, and his Fourth Amendment argument is thus without merit.") (citing *Armstrong v. Squadrito*, 152 F.3d 564, 569–70 (7th Cir. 1998)); *see also United States v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982) (maintaining that a bench warrant is equivalent to a judicial determination of probable cause).

### 2.    Right to Education

To the extent Dakota alleges that his expulsion and subsequent arrest violated his substantive due process or equal protection rights to an education, his claim fails. The right to an education is not a fundamental right under the U.S. Constitution. *Plyler v. Doe*, 457 U.S. 202 (1982).  In addition, in the context of student discipline cases, no fundamental right to education exists in Nebraska.  *Kolesnick By and Through Shaw v. Omaha Pub. Sch. Dist.*, 558 N.W.2d 807, 813 (Neb. 1997).

Arguably, McCann's refusal to allow Dakota to return to school after Dakota was released from DCC, and after completing his school suspension, could be considered a separate act from Dakota's prior student discipline case and hearings. However, to the extent Dakota is alleging that McCann has unconstitutionally prevented him from returning to WHS, he has failed to state a claim upon which relief may be granted.  Indeed, Dakota does not allege that he has completed the final education test necessary to return to WHS,[3] nor does he describe the reasons McCann continues to prevent him from returning to school.  In short, naked assertions without specific facts describing Dakota's efforts to return to school, and the reasons he has been prevented from doing so, are insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678 (stating a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement) (quotations omitted).

---

[3]Dakota alleges that a "final educational test necessary for him to return to" WHS was scheduled for August 12, 2013.  (Filing 1 at CM/CF p. 8.)  Dakota has not alleged that he completed this test.

11

3.    *Eighth Amendment*

The Eighth Amendment provides that "'[e]xcessive bail shall not be required.'" *United States v. Salerno*, 481 U.S. 739, 752 (1987). Dakota alleges that Beadle violated this constitutional right because she refused to present any evidence to support denying bond after his August 12, 2013, arrest. (Filing 1 at CM/ECF p. 23.) Such a claim lacks merit because Beadle is protected by absolute prosecutorial immunity. *See, e.g.*, *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1068 (C.D. Cal. Oct. 18, 2012) (concluding district attorney's request to impose high bail or no bail without just cause was "intimately associated with the judicial phase of the criminal process" and protected by absolute immunity); *Marsh v. Randolph*, No. 1:09-cv-13, 2012 WL 397778, at *4 (E.D. Tenn. Feb. 7, 2012) (dismissing plaintiff's Eighth Amendment claim against a district attorney for requesting excessive bail because the district attorney was entitled to prosecutorial immunity).

4.    *Civil Conspiracy*

Dakota alleges a civil conspiracy claim against McCann, Kingston, and Beadle. (Filing 1 at CM/ECF p. 21.) As part of this claim, Dakota asserts that Defendants had a "meeting" and conspired to find a way to prevent him from returning to WHS. (*Id.*)

To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.*

Given that Dakota has failed to allege facts sufficient for the court to reasonably infer that McCann, Kingston, or Beadle deprived him of a constitutional right, he has

12

also failed to allege a civil conspiracy claim. *Novotny v. Tripp County, S.D.*, 664 F.3d 1173, 1179-80 (8th Cir. 2011) (affirming dismissal of civil conspiracy claims where plaintiff failed to adequately show an underlying constitutional violation).

## IV.  CONCLUSION

In sum, Plaintiffs have failed to allege federal claims upon which relief may be granted and I will grant Defendants' Motions to Dismiss.  However, on my own motion, I will provide Plaintiffs 21 days to file an amended complaint that properly alleges a federal claim.  If Plaintiffs fail to file an amended complaint within 21 days, I will decline to exercise supplemental jurisdiction over Plaintiffs' asserted state law claims and dismiss this matter without prejudice to reassertion in the proper forum.

IT IS THEREFORE ORDERED that:

1.     Plaintiffs' Complaint fails to state a federal claim upon which relief may be granted.

2.     The pending Motions to Dismiss (filings 26, 28, 30, 37 and 39) are granted in part in accordance with this Memorandum and Order.

3.     On my own motion, Plaintiffs shall have 21 days from the date of this Memorandum and Order to file an amended complaint.

4.     If Plaintiffs fail to file an amended complaint in accordance with this Memorandum and Order, I will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss this matter without prejudice to reassertion in the proper forum.

DATED this 31st day of March, 2015.

                              BY THE COURT:

                              *Richard G. Kopf*
                              Senior United States District Judge

_____

      *This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not e'ndorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

14