IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAKOTA PARSONS and DENICE PARSONS, | ) ) ) | |
| Plaintiffs, | ) ) | 8:14CV207 |
| v. | ) ) ) | |
| BLANE MCCANN, individually and as Superintendent of Westside Community Schools; KENT KINGSTON, individually and as Executive Director of Westside Community Schools; WESTSIDE COMMUNITY SCHOOLS; BRENDA BEADLE, individually and in her official capacity as a Douglas County Attorney; DON KLEINE, a Douglas County Attorney; DOUGLAS COUNTY ATTORNEY'S OFFICE; MARK FOXALL, as Director of the Douglas County Department of Corrections; the CITY OF OMAHA; the OMAHA POLICE DEPARTMENT; DOUGLAS COUNTY NEBRASKA, a political subdivision of the State; and JOHN DOES 1 THROUGH 15, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |

This is a 42 U.S.C. § 1983 action stemming from plaintiff Dakota Parsons' 29-week stay in the Douglas County Corrections Center while he was a participant in Young Adult Court, allegedly without a probable cause hearing, without being charged with an offense, and without the opportunity to be released on bond. After my previous order (Filing 52) finding that Plaintiffs' original complaint failed to state

a federal claim upon which relief may be granted—but giving Plaintiffs leave to amend their complaint—Plaintiffs have filed an amended complaint (Filing 54), and Defendants have filed another round of motions to dismiss (Filings 55, 58, 60, 62, 66).

## I. PLAINTIFFS' AMENDED COMPLAINT

Dakota Parsons ("Dakota") and his mother, Denice Parsons ("Denice" or "Dakota's mother"), allege numerous claims arising from an incident at Westside High School ("WHS") in Omaha, Nebraska, that occurred following a band concert on October 25, 2012.[1]  Dakota, who was a student at WHS, threw a firecracker out of a door following the concert.  The firecracker exploded on the pavement, and no one was injured.  During school the next day, October 26, 2012, Dakota's backpack was searched, and it was found to contain materials to make another firecracker, or exploding device, and marijuana. Police subsequently searched the Parsons' home, allegedly finding additional marijuana in Dakota's room.  Dakota was arrested and charged with possession with intent to distribute marijuana, unlawful possession of explosive materials, and possession of a destructive device.

After his arrest, and after an administrative hearing, Dakota was informed that he would be expelled from school until January 2014.  Dakota appealed the decision, and his term of expulsion was reduced to the remainder of the 2012-2013 school year. On November 30, 2012, defendant Blane McCann ("McCann"), Westside Community Schools Superintendent, sent a certified letter to Dakota's mother confirming that Dakota would be expelled for the remainder of the 2012-2013 school year and expressing his "disappointment with the hearing officer's recommendations."

On January 14, 2013, Dakota appeared before a judge, who dropped his bond requirement and released Dakota on his own recognizance.  Dakota, his counsel, and defendant Brenda Beadle, a Douglas County Attorney, agreed that Dakota's case

---

[1]Unless otherwise noted, Plaintiffs' allegations can be found in Filing 54.

should be transferred to the Young Adult Court ("YAC"). Dakota was officially accepted into the YAC on February 15, 2013. Dakota and Denice Parsons met with WHS school officials in April 2013 regarding Dakota's continued education. WHS agreed to provide a tutor, and Dakota signed up to take high school classes online through the University of Nebraska-Lincoln.

On June 17, 2013, Dakota appeared before a district judge in charge of the YAC. He entered a plea of no contest to unlawful possession of explosive materials in the first degree, a class IV felony, and the two other charges were dropped. Dakota signed a court order and agreement to participate in the YAC program. (Filing 46-1 at CM/ECF pp. 3-7.)[2] This program imposed a number of conditions upon Dakota that he agreed to follow, including "submit[ting] to search and seizure of your premises, person or vehicle upon request of the YAC staff," not "associat[ing] with anyone who possesses firearms, ammunition or illegal weapons," and not "possess[ing] firearms, ammunition or illegal weapons." The agreement also provided that "[a]ny violation of the above conditions is cause for revocation of participation in the Young Adult Court and a sentence to confinement," as well as "revocation of Defendant's bond . . . [and] violation of probation charges being filed against him/her." Because Dakota was a minor, the 90-day YAC incarceration period was waived, and he was required to wear an ankle monitor until he turned 18.

---

[2] I previously decided that I may consider this document and others because they are embraced by Plaintiffs' complaint and are part of the public record. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). (Filing 52 at CM/ECF p. 2 n.1.) Plaintiffs do not dispute this, and they reference at least one of these documents in their Brief in Opposition to the motions to dismiss. (Filing 70, at CM/ECF p. 13 (referencing Filing 32-3 (Petition Requesting Admission to the Young Adult Court Program) and stating that "although a participant in Young Adult Court agrees that he or she may be arrested for a violation of probation, a participant in Young Adult Court is not placed on probation until the third and final stage of the Young Adult Court process").)

3

On July 10, 2013, Dakota turned 18 and his ankle monitor was removed. Dakota continued to satisfactorily progress through the YAC program, including being subject to drug testing, undergoing a chemical-dependency test, and calling a YAC representative each evening to check in.  On July 23, 2013, Denice and Dakota Parsons met with a WHS guidance counselor to establish a timetable for completing online classwork before the beginning of Dakota's senior year on August 15, 2013.

On July 25, 2013, the police came to the Parsons' residence because they had received a report that Dakota had been observed "making explosives." Denice Parsons informed the police that the prior day, a company named Midwest Wildlife Solutions had used a trap and smoke device to treat the Parsons' lawn for groundhogs. Nevertheless, the police conducted a search of the home and removed some "old, unusable fireworks from the garage." Dakota left a voice message for Nick Lurz of the YAC regarding the July 25, 2013, police visit.  Lurz did not respond to the message, but on August 2, 2013, Lurz conducted a visit and search of Plaintiffs' home. Lurz found some airsoft guns and pellets, but did not inform Dakota and his mother that these items were a violation of Dakota's YAC agreement. Denice agreed to remove these items from the home.

Plaintiffs allege that in early August 2013, "unknown members of the Westside school system (on information and belief including McCann), unknown members of the Omaha Police Department, and possibly other persons met to 'discuss' Parsons." Plaintiffs do not have "any detailed information regarding the participants at this meeting or the substance of the discussion."  The Parsons allege that this meeting was "instigated by McCann and/or other representatives of Westside Community Schools as part of a plan to keep Parsons from returning to school on August 15, 2013 as required by the hearing officer's order." Neither Dakota nor his attorney were informed about the meeting, and Dakota's counsel did not learn of the meeting until Douglas County Attorney Brenda Beadle told counsel about the meeting "several months after the meeting occurred."  Plaintiffs allege that Beadle met with, and took directions from, a member of the school board "without having a complaint from a

law enforcement agency," and that Beadle "agree[d] to have Parsons arrested for the purpose of keeping him out of Westside High School." Plaintiffs claim that Beadle inserted herself into this investigatory meeting and provided advice and direction to the police.

On August 12, 2013, Dakota was scheduled to take a final educational test that was necessary for him to return to WHS on August 15.  However, on that same day, YAC representatives appeared at the Parsons' home in bullet-proof vests, followed shortly thereafter by several Omaha police officers, who confiscated several items from the home. The officers did not communicate the reason for the search to Dakota and Denice Parsons. Dakota was arrested and jailed in the Douglas County Corrections Center ("DCC") without being informed of the charges or what precipitated his arrest.  Plaintiffs allege that Dakota was arrested without probable cause and without a valid warrant because the warrant indicated that he had violated "probation," but he had never been placed on probation.[3] (Filing 46-1 at CM/ECF p. 9.)  The plaintiffs also assert that the warrant was invalid because it was not supported by an affidavit.

On October 17, 2013, Dakota had his first hearing regarding the August 12, 2013, arrest.  During the hearing, neither the Douglas County Attorney nor the YAC presented the reason for Dakota's August 12, 2013, arrest; the court ordered a psychological examination; and Dakota continued to be jailed without bond. Thereafter, additional hearings were held regarding the county attorney's request that

---

[3]The bench warrant stated that a "complaint has been filed" against Dakota Parsons for the three felonies with which he was originally charged on October 26, 2012, before Dakota's entrance into the YAC program. The bench warrant was directed to the Douglas County Sheriff or "ANY DULY AUTHORIZED LAW ENFORCEMENT OFFICER" to "arrest [Dakota Parsons] . . . and to bring him/her promptly before this court or any judge or magistrate having jurisdiction of this matter, to answer such complaint . . . ." There is not an affidavit attached to the bench warrant. (Filing 46-1.)

5

Dakota continue to be held without bond. As of January 2014, after being jailed for five months, Dakota had still not received a probable cause hearing and had not been informed of the facts supporting the August 2013 arrest.

On or about February 7, 2014, Dakota's attorney filed a writ of habeas corpus alleging Dakota's unlawful detention at DCC. A hearing on the writ of habeas corpus was scheduled for March 6, 2014. One day before the hearing was to occur, the YAC judge ordered Dakota released on his own recognizance, without bond being required, and without Dakota having to appear in court. Plaintiffs allege that Dakota was unlawfully arrested and falsely imprisoned for a total of 203 days. As a result, Dakota suffers from "PTSD" and other "ongoing psychological ill effects." Further, Dakota asserts that Westside Community Schools refuses to allow him to complete his education and graduate.

The plaintiffs allege that the state-run YAC program allows prosecutors "complete discretion in recommending actions to the taken by the Court," lacks "firm standards . . . regarding when a participant may be jailed," and "always follow[s] the recommendations of the county attorney." Plaintiffs allege that "prosecutors in the county attorney's office have complete and unfettered discretion to determine who is jailed for what matters," and "the program is abused by the County Attorney's office as a regular practice." The plaintiffs state that if imprisonment standards had been in place, Beadle "could not have agreed to have Parsons jailed for the purpose of keeping him from returning to Westside High School for his senior year."

Plaintiffs specifically state that the "policies, customs and practices" of Douglas County, the City of Omaha, and the Omaha Police Department "allow a participant in YAC to be arrested and held without bond and without a showing of proximate [sic] cause at the unfettered discretion of the county attorney." Specifically, the "Douglas County Prosecuting Attorney's office has established a pattern and practice of utilizing the lack of standards and the complete and unfettered discretion of the prosecutors to direct the arrest of YAC participants regardless of probable cause."

6

Further, Plaintiffs assert that Westside Community Schools has "policies, customs and practices" that gave defendant McCann and other administrators "the ability to act contrary to the determination of the hearing officer who directed that Parsons be allowed to return to school. Westside allows administrators unfettered discretion to interfere with the right to attend school and the right to have the benefit of the decision of an administrative hearing officer regarding expulsion."

Plaintiffs seek monetary damages, punitive damages, the return of all personal property confiscated from Plaintiffs' home, costs, attorney's fees, an injunction directing the Douglas County Attorney to establish standards for arrest and bail applicable to all defendants in the YAC program, and other relief as may be appropriate.

## II.  ANALYSIS

### A.  Plaintiffs' Claims

Plaintiffs allege several claims through 42 U.S.C. § 1983:

(1)     **False arrest** claim against Beadle, Kleine, the Douglas County Attorney's Office, Douglas County, Omaha Police Department ("OPD"), the City of Omaha, McCann, Westside Community Schools, and Does 1-15 (police officers) for arresting Dakota without a valid warrant and without probable cause;

(2)     **Wrongful search and seizure** claim against Douglas County, OPD, the City of Omaha, and Does 1-15 (police officers) for their search of the Parsons' residence on August 12, 2013, performed without a warrant, without probable cause, and not under the YAC agreement;

7

(3) **Unlawful imprisonment** claim against Foxall (individually and as Director of the Douglas County Department of Corrections), Beadle, Kleine, Douglas County, McCann, and Westside Community Schools for causing Dakota to be jailed and detained without bond for almost seven months without being charged with any crime;

(4) **Equal protection** claim against McCann for refusing to allow Dakota to attend WHS to earn his diploma after his expulsion was completed;

(5) **Civil conspiracy** claim against all defendants for conspiring to prevent Dakota from returning to school by taking him into custody without a properly supported warrant or probable cause and keeping him confined without bond and a showing of probable cause; and

(6) **Eighth Amendment** claim against Beadle and the Douglas County Attorney's Office for requesting that Dakota be held without bond without showing that Dakota was a flight risk or a risk to community safety.

Plaintiffs also assert what appear to be state-law claims:

(7) **Abuse of process** claim against the Douglas County Attorney's Office, Beadle, "representatives" of WHS, and OPD for utilizing the court's process of arrest and setting bail for the "ulterior motive of arresting Parsons and keeping him incarcerated so that he could not return to school"; and

(8) **Violation of "Free Instruction" Clause of Nebraksa Constitution & Neb. Rev. Stat. § 79-283** against McCann for refusing to allow Dakota to attend WHS to earn his diploma after his expulsion

was completed, in violation of the Nebraska Constitution, which provides for "free instruction in the common schools" and Neb. Rev. Stat. § 79-283 (Westlaw 2015), which provides that if a student is expelled from school during the first term of the school year, the maximum period for which the student may be expelled is for the remainder of the school year.

## B.  Motion to Dismiss Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This "plausibility standard" is not one of *probability*, "but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Where a complaint contains facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (brackets omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

## C.  The Motions to Dismiss

### 1.  Omaha Police Department; Douglas County Attorney's Office; Beadle, Kleine & Foxall in Official Capacities

Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b). Each county in Nebraska may sue and be sued in its own name, Neb. Rev. Stat. § 23–101 (Westlaw 2015), but the same is not true of county offices or departments. *See Winslow v. Smith*, 672 F. Supp. 2d 949, 964 (D. Neb. 2009) (sheriff's and county attorney's offices); *Griggs v. Douglas County Corrections Center*, No. 8:07CV404, 2008 WL 1944557, at *1 (D. Neb. Apr. 29, 2008) (county corrections department); *Holmstedt v. York County Jail Supervisor (Name Unknown)*, 739 N.W.2d 449, 461 (Neb. App. 2007) (county sheriff's department), *rev'd on other grounds*, 745 N.W.2d 317 (Neb. 2008); *Jameson v. Plischke*, 165 N.W.2d 373, 376 (Neb. 1969) (county board of supervisors). Further, cities of the metropolitan class may sue and be sued, Neb. Rev. Stat. § 14-101 (Westlaw 2015), but the same is not true of city police departments. *Meyer v. Lincoln Police Dep't*, 347 F. Supp. 2d 706 (D. Neb. 2004) (city police department is agency of city and has no separate legal status under Nebraska law); *Williams v. Raynor Rensch & Pfieffer*, No. 8:11CV446, 2015 WL 2127095 (D. Neb. May 6, 2015) (city police department is subdivision or department of city government and is not separately subject to suit). Therefore, defendants Omaha Police Department and the Douglas County Attorney's Office must be dismissed from this case as not subject to suit.

I also note that Plaintiffs' claims against Brenda Beadle in her official capacity as Douglas County Attorney, Don Kleine in his official capacity as Douglas County Attorney, and Mark Foxall in his official capacity as Director of the Douglas County Department of Corrections are actually claims against Douglas County itself. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official

10

is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity.") (citation omitted).  Therefore, Plaintiffs' claims against Beadle, Kleine, and Foxall in their official capacities will be dismissed as redundant of their claims against Douglas County. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998).

### 2.  City of Omaha

Plaintiffs purport to bring section 1983 claims against the City of Omaha for false arrest, wrongful search and seizure, and civil conspiracy pursuant to the Fourth, Fifth,[4] and Fourteenth Amendments of the United States Constitution. Plaintiffs' claims are based on the actions of several City of Omaha police officers[5] who allegedly wrongfully arrested Dakota Parsons, searched the Parsons' home without a valid warrant, and seized property from the home at the request of, and in concert with, defendants McCann and Westside Community Schools to prevent Dakota from

---

[4]To the extent Plaintiffs rely on the Fifth Amendment to support their claims, such claims must fail because "[t]he Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and Plaintiffs have not alleged that the federal government or a federal action deprived them of property." *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'") and *Junior Chamber of Commerce of Kansas City, Mo. v. Mo. State Junior Chamber of Commerce*, 508 F.2d 1031, 1033 (8th Cir. 1975) (recognizing that "federal action" is necessary "before there is any deprivation of due process in violation of the fifth amendment")).

[5] The police officers are identified in the amended complaint as John Does 1-15. At this point, they have not been further identified or served with process.

returning to school, and *not* for the valid purposes of insuring compliance with the YAC agreement or investigating possible violations of the law.  (Filing 54 ¶¶ 119-136.)  Plaintiffs further allege that City of Omaha policies, customs, and practices proximately caused the constitutional violations at issue in this case, and that the "City of Omaha is liable for the misconduct of the John Doe defendants [police officers] because the policies, customs and practices of the City of Omaha and the Omaha Police Department *allow a participant in YAC to be arrested and held without bond and without* a *showing of* proximate [sic] cause *at the unfettered discretion* of the *county attorney*."  (Filing 54 ¶ 116 (use of italics indicates new language added to amended complaint).) The City of Omaha moves to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(6).  (Filing 55.)

### a. § 1983 Actions Against Municipalities

"A municipality may be liable under § 1983 where 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Hollingsworth v. City of St. Ann*, No. 14-1583, ___ F.3d ___, 2015 WL 5155354, at *5 (8th Cir. Sept. 3, 2015) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  The Supreme Court invalidated heightened pleading requirements in section 1983 suits against municipalities in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right. Moreover, such a holding would disregard the liberality of Fed. R. Civ. P. 8(a)(2) which requires merely 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 8(f), which states 'pleadings shall be so construed as to do substantial justice.' . . . At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

12

A plaintiff is not required to make specific reference to an unconstitutional policy or custom to survive a motion to dismiss; rather, a plaintiff's complaint must contain "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the [defendant]." *Id.* ("the failure of the [plaintiffs] to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to their claim for relief"); *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (the plaintiff "need not . . . specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss").

### b. Policy

There is "an important distinction between claims based on official policies and claims based on customs. Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009) (citing *McGautha v. Jackson County*, 36 F.3d 53, 56 (8th Cir. 1994)); *see also Crawford v. Van Buren County*, 678 F.3d 666, 669 (8th Cir. 2012) ("Although rare, a public official's single incident of unconstitutional activity can establish the requisite policy if the decision is taken by the highest officials responsible for setting policy in that area of the government's business." (internal quotation marks and citation omitted)).

"To establish the existence of a policy, [a plaintiff] must point to 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Jenkins*, 557 F.3d at 633 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). A plaintiff "must also show that the policy was unconstitutional and that it was 'the moving force' behind the harm that he suffered." *Id.* Two circumstances that may lead to municipal liability are (1) a municipality's action or policy "itself violates federal law, or directs an employee to do so," and (2) where "an official policy is lawful on its face and does not compel unconstitutional action," but "municipal action has led an employee to violate a

13

plaintiff's rights," and that action was "taken with deliberate indifference as to its known or obvious consequences." *Hollingsworth*, 2015 WL 5155354, at *5 (internal quotation marks and citations omitted). While it is not clear which of these circumstances exists at this very early stage in the case, I conclude that Plaintiffs' new allegations in their amended complaint are sufficient to allege the existence of an unconstitutional policy of the City of Omaha. Accordingly, I shall deny the City of Omaha's motion to dismiss Plaintiffs' section 1983 "policy" claims against it, without prejudice to the City raising the same argument in a properly supported motion for summary judgment.[6]

### c. Custom

"In contrast to the evidence required to establish an official policy, [the Eighth Circuit has] emphasized that a custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.'" *Jenkins*, 557 F.3d at 634 (quoting *Mettler*, 165 F.3d at 1204). "'[L]iability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a "custom or usage" with the force of law,'" and therefore liability "'cannot arise from a single act.'" *Crawford*, 678 F.3d at 669 (8ᵗʰ Cir. 2012) (quoting *McGautha*, 36 F.3d at 56-57).

In their amended complaint, the plaintiffs have only alleged an isolated incident of police misconduct involving Dakota Parsons; there are no allegations that the City of Omaha and its police officers engaged in such conduct with others. As with their

---

[6] Plaintiffs should be aware that in order to survive a motion for summary judgment, and in the absence of evidence of a facially unlawful city policy or custom, Plaintiffs must prove that the City of Omaha acted or failed to act "with deliberate indifference as to its known or obvious consequences," and that such action or inaction caused the plaintiffs' injuries. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8ᵗʰ Cir. 2013) (internal quotation marks and citation omitted).

original complaint, the plaintiffs have still not alleged facts suggesting a continuing, widespread, persistent pattern of unconstitutional misconduct by the City of Omaha and its employee police officers. (Filing 52 at CM/ECF p. 7.) Even if Plaintiffs' allegations could be construed to suggest such a pattern or custom, they have failed to allege any facts whatsoever of deliberate indifference to, or tacit authorization of, the pattern of misconduct. Therefore, the City of Omaha's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) shall be granted with regard to Plaintiffs' "custom" claims against the City of Omaha.

### 3.  Mark Foxall Individually

Plaintiffs bring section 1983 claims against Mark Foxall, Director of the Douglas County Department of Corrections, individually, for civil conspiracy and unlawful imprisonment because Foxall "caused Parsons to be jailed and detained without being charged with any crime or violation and to be held without bond." (Filing 54, Amended Complaint ¶ 139.)  Plaintiffs assert that Dakota Parsons was jailed based on a bench warrant that was not supported by an affidavit of probable cause, was "arrested and held in jail for an extended time at the request of McCann to prevent Parsons from returning to school," and "was jailed for nearly seven months without being informed of the charges against him and without being allowed bond." (Filing 54 ¶¶ 140-143.)  Foxall moves to dismiss the claims against him, arguing that the amended complaint does not allege that he was personally involved in the wrongful conduct or, alternatively, that he is entitled to qualified immunity or quasi-judicial absolute immunity.  (Filing 59 at CM/ECF p. 1.)

### a.  Civil Conspiracy

To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act

15

injured the plaintiff. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.

*Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798 (8th Cir. 2013) (citations omitted).

Here, Plaintiffs purport to allege a civil conspiracy against "all Defendants" (Filing 54 at CM/ECF p. 25 (Count V heading)), but fail to allege any facts whatsoever regarding Foxall. Plaintiffs allege that defendants Beadle, the Douglas County Attorney's Office, representatives of Westside High School, and members of the Omaha Police Department met and "conspired to find a way to prevent Parsons from returning to school," using an unlawful arrest and detention to do so. (Filing 54 at CM/ECF ¶¶ 166-173.)

There are simply no allegations that Foxall participated in any aspect of this alleged conspiracy and, for that reason, Plaintiffs' civil conspiracy claim against Foxall individually must be dismissed. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

## b.  Unlawful Imprisonment

Plaintiffs allege that Foxall "caused Parsons to be jailed and detained without being charged with any crime or violation and to be held without bond in violation of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution not to be seized and deprived of liberty without due process of law." (Filing 54 ¶ 139.)  Plaintiffs' amended complaint states that Dakota Parsons

16

was "jailed as the result of a bench warrant issued without an affidavit of probable cause" (Filing 54 ¶ 140) and jailed "without being informed of the charges against him and without being allowed bond" (Filing 54 ¶ 143).

Nowhere do Plaintiffs allege that Foxall had any involvement in deciding if, when, and how long Dakota should be held in prison or that Judge Ashford's orders of confinement were facially invalid. To the contrary, Plaintiffs allege that the YAC program allows prosecutors to recommend actions to be taken "by the Court," such as "when a participant may be jailed"; "prosecutors . . . have complete and unfettered discretion to determine who is jailed"; and Judge Ashford "denied bail," "refused to set a bond," and "ordered Parsons continue [sic] to be held without bond" until the day prior to the court's scheduled hearing on Dakota Parsons' writ of habeas corpus when "Judge Ashford . . . ordered that Parsons be released on his own recognizance. Parsons was then released . . . ." (Filing 54 ¶¶ 71-74, 85, 87-90.)

Because Plaintiffs' allegations indicate that Foxall was acting pursuant to court order, he has absolute immunity from Plaintiffs' claims flowing from the fact of Dakota Parsons' incarceration. *Figg v. Russell*, 433 F.3d 593, 599 (8th Cir. 2006) (warden was entitled to absolute immunity against plaintiff's § 1983 claim for 416-day illegal confinement because state habeas court had not yet issued writ, and jailors and warden were acting pursuant to facially valid order from state court and parole board; "Officials such as the [wardens] must not be required to act as pseudo-appellate courts scrutinizing the orders of judges." (internal quotation marks and citations omitted)); *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) ("A judge's absolute immunity extends to public officials for acts they are specifically required to do under court order or at a judge's direction." (internal quotation marks and citations omitted)); *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994) ("we have extended absolute immunity to officials for acts they are specifically required to do under court order or at a judge's direction" (internal quotation marks and citation omitted)); *Patterson v. Von Riesen*, 999 F.2d 1235 (8th Cir. 1993) ("a warden is absolutely immune from damages flowing from the fact of a prisoner's incarceration, when that

17

incarceration occurs pursuant to a facially valid order of confinement"; dismissal on 12(b)(6) grounds proper when defendant dismissed as immune from suit). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (county attorney, police officer, city, and county not subject to § 1983 claim under Eighth Amendment for excessive bail because "none of the defendants set [the plaintiff's] bail. Thus, there can be no causal connection between any action on the part of the defendants and any alleged deprivation of [the plaintiff's] Eighth Amendment rights.").[7]

### 4. Douglas County

Plaintiffs bring section 1983 claims against Douglas County and its officials for false arrest, wrongful search and seizure, unlawful imprisonment, civil conspiracy, Eighth Amendment (bail), and abuse of process under state law. Douglas County moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(4), 12(b)(5), and 12(b)(6) because this court does not have personal jurisdiction over Douglas County due to the insufficiency of Plaintiffs' service of process.  Further, Douglas County asserts, dismissal without opportunity to cure is proper because the County does not have a policy or custom that deprived Plaintiffs of any rights, and no factual allegations are made against Douglas County, making proper service futile. Finally, Douglas County contends that Plaintiffs' state-law claim for abuse of process must be dismissed because Plaintiffs do not allege that they submitted a written notice of claim to Douglas County, a condition precedent to filing suit under the Political Subdivisions Tort Claims Act ("PSTCA"), Neb. Rev. Stat. §§ 13-901 to 13-928 (Westlaw 2015). In any event, Douglas County argues, the PSTCA does not waive the County's

---

[7]Plaintiffs argue in their brief in response to the parties' motions to dismiss that they have asserted an Eighth Amendment claim for failure to provide adequate medical treatment while Dakota was in prison.  (Filing 70 at CM/ECF pp. 3-4.)  The plaintiffs' amended complaint makes no mention of such a claim.  (Filing 54 ¶¶ 180-194 ("Count VII Violation of Eighth Amendment" claim mentioning only excessive bail.))  Further, my prior order granting Plaintiffs leave to amend their complaint did not give Plaintiffs leave to add new claims.  (Filing 52.)

sovereign immunity against abuse-of-process claims.

### a.  Failure to Serve Douglas County

A "state-created governmental organization" must be served by "(A) delivering a copy of the summons and of the complaint to its chief executive officer" or by "(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Counties in Nebraska may be served by mail service upon the chief executive officer or on the clerk. Neb. Rev. Stat. § 25–510.02(2) (Westlaw 2015) ("[a]ny county, city, or village of this state may be served by personal, residence, certified mail, or designated delivery service upon the chief executive officer or clerk").

Because service of process on Douglas County was not accomplished, Douglas County's Fed. R. Civ. P. 12(b)(5) motion will be granted without prejudice.  However, because Douglas County had actual notice of the plaintiffs' claims via service upon defendants Beadle and Kleine in their official capacities as Douglas County Attorneys, the County would not be harmed by my allowing the plaintiffs to cure their error. Accordingly, I shall order that Plaintiffs properly serve Douglas County within 20 days of the date of this memorandum and order and submit such proof of service to the court, or all claims against Douglas County will be dismissed without prejudice.

### b.  Policy or Custom

For a county or its officers in their official capacity to be liable under section 1983, Plaintiffs "must prove its policies or customs caused a violation of [their] constitutional rights," *Wall v. Stanek*, 794 F.3d 890, 893 (8ᵗʰ Cir. 2015), whether the policy or custom is "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Gladden v. Richbourg*, 759 F.3d 960, 968 (8ᵗʰ Cir. 2014). As discussed above with regard to the City of Omaha, Plaintiffs' allegations are sufficient to draw an inference that Douglas County has a policy of

encouraging and conspiring to effectuate searches, seizures, and arrests of YAC participants without actual probable cause and imprisoning them for an excessive amount of time without bond and without being advised of the charges against them, in violation of the plaintiffs' Fourth, Eighth, and Fourteenth Amendment rights. As with the City of Omaha, this is enough to survive a motion to dismiss on Plaintiffs' section 1983 "policy" claims, but not their "custom" claims.[8]

### c.  Abuse of Process (State Law)

The Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-926 (Westlaw 2015), provides uniform procedures for the bringing of tort claims against all political subdivisions, including counties.  Neb. Rev. Stat. § 13-903(1) (Westlaw 2015). Specifically, the Act states that:

> [N]o political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and . . . no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act.

---

[8]Plaintiffs' amended complaint contains new allegations that Douglas County attorneys routinely abuse the YAC program; have "complete discretion" and a lack of standards in recommending actions to the court which deprive YAC participants of their constitutional rights; have established a "pattern and practice of utilizing the lack of standards and the complete and unfettered discretion . . . to direct the arrest of YAC participants regardless of probable cause"; refused to offer to the court any facts or explanation supporting Dakota Parsons' arrest; allow YAC participants generally, and Dakota Parsons specifically, to be arrested and held without bond and without a showing of probable cause; and participated in an investigatory meeting and provided advice and direction to the City of Omaha police about how Parsons could be arrested in order to keep him out of Westside High School.  (Filing 54 ¶¶ 71-73, 105-109, 116, 145, 169, 177-178.)

Neb. Rev. Stat. § 13-902 (Westlaw 2015). The term "tort claim" is defined in the Act as "any claim against a political subdivision for money only on account of . . . personal injury . . . caused by the . . . wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage . . . ." Neb. Rev. Stat. § 13-903(4) (Westlaw 2015). The Act specifically excludes from its coverage "[a]ny claim arising out of . . . malicious prosecution [or] abuse of process. . . ." Neb. Rev. Stat. § 13-910(7) (Westlaw 2015).

Because Plaintiffs' state-law claim of abuse of process is asserted against Douglas County, a political subdivision of the State of Nebraska, and defendant Brenda Beadle in her official capacity as a county attorney for the political subdivision, Plaintiffs' claims are governed by the PSTCA. Plaintiffs do not allege that they have submitted written notice of their claim to Douglas County, as required by the PSTCA. Neb. Rev. Stat. § 13-905 (Westlaw 2015) (tort claim filing requirements). However, assuming Plaintiffs had submitted such notice, section 13-910(7) specifically provides that liability imposed by the Act shall not apply to claims for malicious prosecution and abuse of process, providing Douglas County and defendant Beadle in her official capacity "a complete defense" to Plaintiffs' state-law claim of abuse of process. *Hatcher v. Bellevue Volunteer Fire Dep't*, 628 N.W.2d 685, 695 (Neb. 2001). Therefore, the motion to dismiss Plaintiffs' abuse-of-process claim filed by defendants Douglas County and Brenda Beadle in her official capacity will be granted.

### 5.  Don Kleine & Brenda Beadle Individually

Defendant Kleine, individually, is named in Plaintiffs' section 1983 claims for false arrest, unlawful imprisonment, and civil conspiracy. As against defendant Brenda Beadle individually, Plaintiffs assert section 1983 claims for false arrest, unlawful imprisonment, civil conspiracy, and violation of the Eighth Amendment

(bail), as well as a state-law claim for abuse of process. Beadle and Kleine move to dismiss (Filing 62) these claims pursuant to Fed. R. Civ. P. 12(b)(6) and absolute immunity or, in the alternative, qualified immunity.

### a.  Don Kleine

Because Plaintiffs' amended complaint contains no factual allegations whatsoever regarding Douglas County Attorney Kleine, I shall grant the motion to dismiss all claims against Kleine individually pursuant to Fed. R. Civ. P. 12(b)(6). *Mayorga*, 442 F.3d at 1132 ("To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."); *McDowell v. Jones*, 990 F.2d 433, 435 (8th Cir. 1993) ("To hold a supervisor liable under § 1983, a plaintiff must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations. Or a plaintiff could show that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." (citation omitted)); *Madewell*, 909 F.2d at 1208 ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

### b.  Brenda Beadle

Plaintiffs allege that before Dakota Parsons was arrested for a "probation violation," Douglas County Attorney Beadle acted in an investigatory role and as an advisor to police when she met and conspired with members of the Omaha Police Department and Westside School District officials—without having a complaint from a law-enforcement agency—to plan Dakota Parsons' arrest.  Shortly after this alleged meeting, a bench warrant was issued on August 12, 2013, for a "probation violation," and Dakota was then subject to an unlawful search and seizure by City of Omaha police who accompanied YAC officers in searching his home. Thereafter, Plaintiffs allege that Dakota Parsons was arrested and imprisoned for seven months without

22

knowing the charges against him; without being entitled to release on bond pursuant to Beadle's advice during court hearings; and without ever being charged or convicted of any crime relating to the August 12, 2013, search, seizure, and arrest.

Beadle in her individual capacity argues that Plaintiffs have failed to state claims against her pursuant to Fed. R. Civ. P. 12(b)(6), or that she is entitled to either absolute or qualified immunity from Plaintiffs' section 1983 claims for money damages for false arrest, unlawful imprisonment, violation of the Eighth Amendment (bail), and civil conspiracy. (Filing 63.)

### i.  Absolute and Qualified Immunity

> Prosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their official duties.  If the prosecutor is acting as advocate for the state in a criminal prosecution, then the prosecutor is entitled to absolute immunity. Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process.  In contrast, a prosecutor is entitled only to qualified immunity when [s]he pursues actions in an investigatory or administrative capacity.  In determining whether particular actions of government officials fit within the absolute or qualified immunity standard, the Supreme Court has adopted a functional approach that looks to the nature of the function performed, not the identity of the actor who performed it.

*Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) (internal quotation marks omitted) (citing *Burns v. Reed*, 500 U.S. 478 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Forrester v. White*, 484 U.S. 219 (1987)).

The scope of a prosecutor's absolute immunity has been found to include actions associated with "the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process," *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003), even if the actions are "patently improper" or made "in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of [the prosecutor's] jurisdiction." *Williams v. Hartje*, 827 F.2d 1203, 1208-09 (8th Cir. 1987). The scope of a prosecutor's absolute immunity also includes "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273.

The Supreme Court has held that a prosecutor does not have absolute immunity when he or she gives legal advice to the police or performs "investigatory functions that do not relate to . . . preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273 (citing *Burns,* 500 U.S. at 492-496 ("We do not believe . . . that advising the police in the investigative phase of a criminal case is so intimately associated with the judicial phase of the criminal process that it qualifies for absolute immunity" (internal quotation marks and citation omitted)).

If a prosecutor is not acting as an "advocate for the state in a criminal prosecution" such that absolute immunity would apply, the prosecutor may be entitled to qualified immunity "when he pursues actions in an investigatory or administrative capacity." *Brodnicki*, 75 F.3d at 1266 (internal quotation marks and citation omitted). When presented in the context of a Rule 12(b)(6) motion, a public official must "show that she is entitled to qualified immunity on the face of the complaint." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011).

> State officials enjoy qualified immunity from a § 1983 action if their conduct did not violate "clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity is appropriate only if "no reasonable factfinder" could determine that (1) the facts viewed in the light most favorable to the plaintiff show that the officer's conduct violated a constitutional right, and (2) the constitutional right was "clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful." *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009).

*S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 850 (8th Cir. 2013). If an official did not deprive the plaintiff of a constitutional or statutory right, the plaintiff "does not need qualified immunity, as he is not liable under § 1983." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

### ii.  False Arrest

Plaintiffs assert that Beadle caused Dakota Parsons to be arrested without a valid bench warrant and without probable cause. "A citizen who is arrested without probable cause can bring a civil action against the officer[9] under 42 USC § 1983 for false arrest. A false arrest is a violation of the Fourth Amendment right against unreasonable seizure of persons. . . . The existence of probable cause thus defeats a false arrest claim." Sarah Hughes Newman, *Proving Probable Cause: Allocating the Burden of Proof in False Arrest Claims Under § 1983*, 73 U. Chi. L. Rev. 347, 347-48 (2006) (footnote added).

Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime.

---

[9]Here, the defendant police officers (John Does 1-15) have not yet been identified or served with process.

*Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). In a claim for damages, officers are "entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable"—that is, officers are not liable if they had "arguable probable cause" to make the arrest. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008).

*Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8th Cir. 2012).

The police officers who allegedly arrested Dakota Parsons were executing a bench warrant that was dated the day of the arrest and signed by a judge of the District Court of Douglas County, Nebraska; was directed to "any duly authorized law enforcement officer"; stated that "[t]he court finds, upon oath or affirmation, probable cause exists for issuance of a warrant"; and directed officers to "immediately arrest said defendant wherever he/she may be found and to bring him/her promptly before this court or any judge or magistrate having jurisdiction of this matter . . . ." (Filing 46-1.)

"An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988); *see also Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (arrest was not unreasonable under Fourth Amendment and did not give rise to claim under § 1983 when officer's car computer showed existence of arrest warrant, which was verified over police radio); *see, e.g., Moiser v. Blum*, 875 F.2d 202, 204 (8th Cir. 1989) (referring to "false arrest cases" holding that arrest executed pursuant to a facially valid warrant generally does not give rise to cause of action under § 1983 against arresting officer).

If the arresting officers in this case cannot be held liable under section 1983 because of the facially valid bench warrant directing the officers to arrest Parsons and bring him before a judge, then Beadle cannot be held liable for causing the officers to

effect such an arrest. It is worth emphasizing that there is *no claim* in the amended complaint that Beadle lied or misrepresented the facts as she knew them to the judge.

Even if the bench warrant for Parsons' arrest was not actually (as opposed to facially) valid—a fact alleged by Plaintiffs that I must accept as true—the police officers who arrested Dakota Parsons would be entitled to qualified immunity because Plaintiffs do not allege any facts from which an inference can be drawn that reasonable police officers in the City of Omaha police officers' position would have known that Dakota Parsons' arrest was illegal despite the existence of the bench warrant. *Womack v. City of Bellefontaine Neighbors*, 193 F.3d 1028, 1031 (8th Cir. 1999) (officers entitled to qualified immunity if officers arrested suspect "with the objectively reasonable belief that they had probable cause to do so—even if they were mistaken"); *see also Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994) ("The [arrest] warrant itself, however, shields [the sheriff's deputy] from liability for executing it, unless a reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization."); *Edwards v. Baer*, 863 F.2d 606, 607-08 (8th Cir. 1988) (police officer who believed outstanding traffic warrant justified arrest, but warrant was actually invalid, was entitled to qualified immunity from § 1983 invalid-arrest claim because officer "could have believed that a warrant existed and that he had legal authority to make an arrest based on that warrant").

If the City of Omaha police officers who arrested Parsons pursuant an actually invalid bench warrant would be entitled to qualified immunity from the Parsons' section 1983 false-arrest claim, so would Beadle to the extent she caused the arrest to occur. Therefore, Plaintiffs' false-arrest claim against Brenda Beadle in her individual capacity shall be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Kohl*, 5 F.3d at 1147 n.1 (when facts presented in complaint fail to state a claim or clearly give rise to immunity, claim should be dismissed under Rule 12(b)(6)).

### iii.  Unlawful Imprisonment

Plaintiffs allege that once Dakota Parsons was arrested and imprisoned, Beadle violated his procedural due process rights by failing to advise him of the charges against him and by holding him for 203 days without either charging Dakota with a crime or violation of probation, revoking his YAC membership, or bringing him to trial.

Whether an imprisoned arrestee is a probationer, involved in a post-plea diversion program, or a first-time offender, he or she is entitled to procedural due process.  *See State v. Shambley*, 795 N.W.2d 884 (Neb. 2011) (in post-plea diversion programs, such as drug court, participants are entitled to same due process protections as persons facing termination of parole or probation, such as informal hearing to assure that violation of probation will be based on "verified facts" and that probationer "is entitled to an opportunity to show that he or she did not violate the conditions," written notice of time and place of hearing, disclosure of evidence, neutral fact-finder, opportunity to be heard and present witnesses and documentary evidence, right to cross-examine witnesses, written decision by fact-finder, and assistance of counsel when probationer's version of facts can only be represented by trained advocate); *United States v. Sutton*, 607 F.2d 220, 222 (8ᵗʰ Cir. 1979) ("due process requires that a preliminary hearing to determine whether probable cause exists to believe that a probation violation has occurred must be held at the time of, or as near as possible to, arrest and detention of the probationer"; "at the preliminary hearing the probationer is entitled to notice of alleged violations"; "the loss of liberty resulting from the revocation of probation was a serious interruption of an individual's life and was entitled to the protections of due process").[10]

---

[10] *See also* Neb. Rev. Stat. § 29-412 (Westlaw 2015) ("Whenever any person has been arrested under a warrant as provided in sections 29-401 to 29-411, it shall be the duty of the officer making the arrest to take the person so arrested before the proper magistrate; and the warrant by virtue of which the arrest was made, with the proper

"Generally, prolonged detention beyond the term authorized by law unlawfully deprives a prisoner of rights protected under the due process clause of the Fourteenth Amendment." *Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005).[11] A

---

return endorsed thereon and signed by the officer, shall be delivered to such magistrate."); Neb. Rev. Stat. § 29-504 (Westlaw 2015) ("When the complaint is for a felony, upon the accused being brought before the magistrate, he shall proceed as soon as may be, in the presence of the accused, to inquire into the complaint."); Neb. Rev. Stat. § 29-1606 (Westlaw 2015) ("It shall be the duty of the county attorney . . . . to inquire into and make full examination of all the facts and circumstances connected with any case on preliminary examination, as provided by law, touching the commission of any offense wherein the offender shall be committed to jail, or become recognized or held to bail. If the prosecuting attorney shall determine in any such case that an information ought not to be filed, he shall make, subscribe, and file with the clerk of the court a statement in writing, containing his reasons, in fact and in law, for not filing an information in such case . . . ."); Neb. Rev. Stat. § 29-1607 (Westlaw 2015) ("No information shall be filed against any person for any offense until such person shall have had a preliminary examination therefor . . . unless such person shall waive his or her right to such examination . . . . The preliminary examination shall be conducted as soon as the nature and the circumstances of the case will permit."); Neb. Rev. Stat. § 29-2267 (Westlaw 2015) (court shall not revoke probation or increase requirements imposed on probationer "except after a hearing upon proper notice where the violation of probation is established by clear and convincing evidence. The probationer shall have the right to receive, prior to the hearing, a copy of the information or written notice of the grounds on which the information is based. The probationer shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel").

[11]*See also* *Slone v. Herman*, 983 F.2d 107, 110 (8th Cir. 1993) (continued detention after judge suspended inmate's sentence and such order became final and nonappealable "unlawfully deprived [inmate] of his liberty, and a person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment*); see, e.g.*, *Harris v. McSwain*, 417 Fed. Appx. 594, 2011 WL 1770457 (8th Cir. May 9, 2011) (inmate stated claim for damages for violation of his constitutional rights under § 1983 against individual correctional center employees when inmate was detained beyond the date his lawful sentence had ended and individual employees knew of unlawful detention but refused to remedy it (citing

prosecutor may be held liable under section 1983 for a suspect's prolonged imprisonment without a judicial determination of probable cause and without the filing of a formal charge. *See Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 809 (8th Cir. 1994) (in § 1983 case where suspect was held for 14 months without initial judicial determination of probable cause and without filing of formal charge following warrantless arrest, court noted that "at least one of the actors responsible for [the plaintiff's] deprivation of liberty was never a party to this action: the Arkansas prosecutor who failed to charge [the plaintiff] with a crime or to bring him to trial").

However, prosecutors are entitled to absolute immunity from liability for their decision regarding whether to initiate a prosecution. *Hartje*, 827 F.2d at 1209 ("The decision of a prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity."); *Tilson*, 28 F.3d at 809 n.17 (citing case suggesting that Arkansas prosecutor who failed to charge civil rights plaintiff with a crime or to bring him to trial would be absolutely immune from liability for prosecutor's actions of reviewing evidence and deciding whether to initiate prosecution).

While it is clear that the Douglas County prosecutors failed to execute their duties[12] to examine the facts of Dakota Parsons' case and either file an information, declare to the clerk of court why an information would not be filed, or begin revocation proceedings under the YAC agreement, absolute immunity protects county

cases)) (unpublished disposition).

[12] Neb. Rev. Stat. § 29-1606 (Westlaw 2015) ("It shall be the duty of the county attorney . . . to inquire into and make full examination of all the facts and circumstances connected with any case on preliminary examination, as provided by law, touching the commission of any offense wherein the offender shall be committed to jail, or become recognized or held to bail. If the prosecuting attorney shall determine in any such case that an information ought not to be filed, he shall make, subscribe, and file with the clerk of the court a statement in writing, containing his reasons, in fact and in law, for not filing an information in such case . . . .").

attorneys like Beadle from liability for this failure. Admittedly, application of absolute prosecutorial immunity in cases like this "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler,* 424 U.S. at 427-28. *See also Webster v. Gibson,* 913 F.2d 510 (8th Cir. 1990) (in § 1983 action against prosecutor for depriving arrestee of prompt judicial determination of probable cause, prosecutor was absolutely immune from damages where bond hearing was not held until 45 days after arrest, judge then ordered prosecutor to file information or release arrestee, and prosecutor failed to charge arrestee until 56 days later). Therefore, Brenda Beadle in her individual capacity is absolutely immune from Plaintiffs' section 1983 claim for money damages for unlawful imprisonment, and this claim must be dismissed.

### iv.  Eighth Amendment (Bail)

Beadle's alleged act of continually advising the court that Dakota Parsons should not be released on bond is also entitled to absolute immunity because advocating for a particular level of bond in court is within the prosecutor's protected function as an advocate for the state, even if such actions are "patently improper" or made "in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of [the prosecutor's] jurisdiction," *Williams,* 827 F.2d at 1208-09. *See Myers v. Morris,* 810 F.2d 1437, 1446 (8th Cir. 1987) (prosecutor's role in "advocating a particular level of bail" is protected by absolute prosecutorial immunity), *overruled on other grounds, Burns,* 500 U.S. 478. Therefore, Plaintiffs' Eighth Amendment (bail) claim against Brenda Beadle individually shall be dismissed.

31

**v.  Civil Conspiracy**

Plaintiffs allege that prior to August 12, 2013, defendant Beadle met with representatives of Westside High School and members of the Omaha Police Department to discuss Parsons' imminent return to WHS and to find a way to prevent Parsons from returning to school, despite the ruling of an administrative hearing officer that Parsons could be expelled no longer than the 2012-13 school year. Plaintiffs allege that, during this investigatory meeting, Beadle advised and directed the police, including advising them that "Parsons could be arrested," and that this meeting was held in furtherance of the unconstitutional acts of "taking Parsons into custody without a properly supported warrant or probable cause and keeping him in custody" for several months "without bond and without any showing of probable cause."  (Filing 54, Amended Complaint ¶¶ 166-170.)

Insofar as absolute immunity is concerned, Beadle's alleged act of meeting with police and school officials prior to Dakota Parsons' arrest and confinement in order to plan the arrest and detention is *not* entitled to absolute immunity because these allegations suggest advising the police in the investigative phase of a criminal case that never came to be—that is, Dakota Parsons was arrested and imprisoned for seven months without being arraigned or charged for the August 12, 2013, incident and was then released. *Anderson*, 327 F.3d at 769 (giving of legal advice to police during investigation strips prosecutor of absolute immunity); *Buckley*, 509 U.S. at 273-74 ("if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction"; "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." (internal quotation marks and citation omitted)).

However, it is clear that Beadle is entitled to qualified immunity as to Plaintiffs' civil conspiracy claim. *Anderson*, 327 F.3d at 769 (even though act of giving legal advice to police during investigation strips prosecutor of absolute immunity, "the

32

doctrine of qualified immunity remains available . . . for that act"); *Young v. Douglas County*, No. 8:07CV265, 2009 WL 2568061, at *3 (D. Neb. Aug. 19, 2009) ("The question is whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity." (quotation marks and citation omitted)).

Based on the allegations in the amended complaint and the exhibits referenced in, and embraced by, the complaint and contained in official court records of the District Court of Douglas County, Nebraska, Beadle is entitled to qualified immunity to the extent the amended complaint alleges that Beadle advised City of Omaha police officers that they could search Parsons' home, arrest Dakota Parsons, and imprison him.

At the time of the August 12, 2013, search of the Parsons' home, Dakota's YAC agreement allowed the search and seizure of his home "upon request of" YAC staff (with no cause or suspicion required), a YAC officer knew that Dakota had violated that agreement just 10 days prior by possessing an airsoft gun and pellets, and City of Omaha police had visited the Parsons' residence the prior month due to a complaint that Parsons had been "making explosives," after which police removed from his home "old, unusable fireworks." (Filing 54, Amended Complaint ¶¶ 43-44; Filing 46-1, Young Adult Court Order and Agreement.)

These alleged facts and exhibits, combined with Eighth Circuit law stating that "when a probationer[13] consents to a search condition, his already-reduced reasonable

---

[13]Plaintiffs argue that Dakota Parsons was not a "probationer" at the time of his arrest. However, Plaintiffs' allegations and supporting documents from the District Court for Douglas County, Nebraska, clearly establish a probation-like arrangement. *See* Neb. Rev. Stat. § 29-2246(4) (Westlaw 2015) ("Probation means a sentence under which a person found guilty of a crime upon verdict or plea or adjudicated delinquent or in need of special supervision is released by a court subject to conditions imposed

expectation of privacy diminishes significantly," justified the search of the Parsons' home by the YAC staff and by the police officers who accompanied them. *United States v. Brown*, 346 F.3d 808, 811 (8th Cir. 2003) (where probationer was subject to search condition that allowed searches by probation officers, but not police officers, and where probation officers brought police with them to search probationer's home, court held: "Probation offices are neither designed nor staffed to conduct these types of searches alone. Probation officers often must bring law enforcement along to ensure the probation officers' safety. We hold the governmental interest in ensuring probation officer safety outweighs any marginal, additional intrusion into [the searchee's] privacy resulting from the task force agents' presence. In short, when a probationary condition authorizes searches by probation officers, the Fourth Amendment does not require probation officers to choose between endangering themselves by searching alone and foregoing the search because they lacked the resources and expertise necessary to search alone safely. Thus, . . . the government can prevail if [the probation officer] had a reasonable suspicion that [the searchee] was violating the terms of his probation." (internal citations omitted)).[14]

---

by the court and subject to supervision."); Filing 46-1 (Young Adult Court Order and Agreement indicating Parsons was found guilty of a crime upon guilty plea, was subject to conditions and supervision by YAC staff, could be subject to "revocation" for violation of conditions and sentenced to confinement, and upon successful completion of program, Parsons could withdraw guilty plea and state could reduce charge to misdemeanor or dismiss the charge).

[14]"[T]o determine whether the Fourth Amendment forbids a search, we weigh the degree to which a search intrudes upon an individual's reasonable expectation of privacy against the degree to which the government needs to search to promote its legitimate interests. . . . A probationary search pursuant to a search condition intrudes less upon protected privacy interests. '[P]robationers do not enjoy the absolute liberty to which every citizen is entitled.' [*United States v.*] *Knights*, 534 U.S. [112,] 119 [2001] (internal quotations omitted). And when a probationer consents to a search condition, his already-reduced reasonable expectation of privacy diminishes significantly. *Id.* at 120. On the other side of the balance, to protect the innocent, the government legitimately needs more freedom to search probationers because the very

Further, because Plaintiffs' 1983 claims against Beadle for false arrest and unlawful imprisonment must be dismissed, the civil conspiracy claim based on that arrest and imprisonment must also be dismissed. *Slusarchuk v. Hoff*, 346 F.3d 1178, 1183 (8th Cir. 2003) (absent underlying constitutional violation, "'there is no actionable conspiracy claim'") (quoting *Cook v. Tadros*, 312 F.3d 386, 388 (8th Cir. 2002)); *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999) (affirming dismissal of section 1983 claim for conspiracy to violate employees' right of free association because claims underlying the conspiracy claim had been properly dismissed, and a civil conspiracy claim does not set forth an independent cause of action, but is sustainable only after underlying violations have been established).

## vi. Abuse of Process (State Law)

The requirements of the PSTCA also apply when an official is sued in his or her individual capacity, but is performing within the scope of employment. *Cole v. Clarke*, 2003 WL 21278477, at *4 (Neb. Ct. App., June 3, 2003); *Cole v. Wilson*, 627 N.W.2d 140 (Neb. Ct. App. 2001); *Stagemeyer v. County of Dawson*, 205 F. Supp. 2d 1107, 1118 (D. Neb. 2002). Because the facts alleged in Plaintiffs' amended complaint indicate that Beadle's actions—which form the basis for Plaintiffs' abuse-of-process claim against her—were taken within the scope of her employment as a Douglas County Attorney, the PSTCA applies. Because the PSTCA does not waive sovereign immunity for abuse-of-process claims, defendant Beadle's motion to dismiss this claim against her will be granted.

─────────────

assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law." *Brown*, 346 F.3d at 811 (some internal quotation marks and citations omitted).

### 6.  McCann, Kingston & Westside Community Schools

Plaintiffs allege that in early August 2013, "unknown members of the Westside school system (on information and belief including McCann), unknown members of the Omaha Police Department, and possibly other persons met to 'discuss' Parsons." The amended complaint states that this meeting was "instigated by McCann and/or other representatives of Westside Community Schools as part of a plan to keep Parsons from returning to school on August 15, 2013 as required by the hearing officer's order." (Filing 54.) The plaintiffs also allege that defendant McCann requested that Parsons be arrested and held in jail for an extended amount of time in order to prevent him from returning to WHS and that McCann and Westside Community Schools refuse to allow Parsons to complete his education and graduate, even though Parsons completed all requirements necessary for him to return to WHS prior to the 2015-2016 school year.

Plaintiffs assert that Westside Community Schools has "policies, customs and practices" that gave defendant McCann and other administrators "the ability to act contrary to the determination of the hearing officer who directed that Parsons be allowed to return to school. Westside allows administrators unfettered discretion to interfere with the right to attend school and the right to have the benefit of the decision of an administrative hearing officer regarding expulsion." (Filing 54.)

### a.  Kent Kingston

Other than naming defendant Kent Kingston in the case caption on the first page of the amended complaint, Plaintiffs make no factual allegations whatsoever about Kingston's involvement in the events leading to this lawsuit. Therefore, Kingston will be dismissed from this case. *Madewell*, 909 F.2d at 1208 ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

36

### b.  Blane McCann

As against defendant Blane McCann, individually and as Superintendent of Westside Community Schools, Plaintiffs assert section 1983 claims for false arrest, unlawful imprisonment, equal protection, and civil conspiracy, as well as state-law claims for abuse of process and violation of the "free instruction" clause of the Nebraska Constitution and Neb. Rev. Stat. § 79-283.  McCann moves to dismiss all claims against him for failure to state a claim and because qualified immunity shields him from liability in his individual capacity.  (Filing 67.)

Because Plaintiffs' claims against McCann in his official capacity are in reality claims against the school district for which he works, all claims against McCann in his official capacity shall be dismissed as redundant of Plaintiffs' claims against Westside Community Schools.  Plaintiffs' claims against McCann in his individual capacity are discussed below.

### i.  False Arrest and Unlawful Imprisonment

Plaintiffs have alleged that defendant McCann directed that Dakota Parsons be arrested and imprisoned for the purpose of keeping him out of WHS, but Plaintiffs have not alleged that McCann had the authority to effect an arrest or the resulting confinement. *Williams v. Baird*, 273 Neb. 977, 988 (Neb. 2007) (father failed to state a § 1983 claim against Department of Health and Human Services caseworker where father alleged that he was arrested at caseworker's direction in violation of Fourth Amendment; caseworker had no authority to arrest because, under Nebraska law, only peace officers have the authority to effect an arrest; "it is inconsequential whether [the caseworker] might have directed law enforcement to arrest [the father], as law enforcement would have been required to makes [sic] its own assessment of probable cause"; because there was no indication that caseworker was a member of law enforcement, court concluded "as a matter of law that [the father] has failed to state a legally cognizable claim for the violation of a constitutional right. As such, we

conclude as to this contention that [the caseworker] is entitled to qualified immunity").

Further, and as discussed above with regard to defendant Beadle, the arresting officers in this case could not be held liable under section 1983 if the bench warrant directing them to arrest Parsons and bring him before a judge was facially valid; therefore, McCann cannot be held liable for causing the officers to effect such an arrest.  If the bench warrant was actually invalid, as Plaintiffs allege, the City of Omaha police officers who arrested Parsons pursuant to that bench warrant would be entitled to qualified immunity from the Parsons' section 1983 false-arrest claim; therefore, McCann would also be entitled to qualified immunity to the extent he caused the arrest to occur.

Therefore, Plaintiffs' false-arrest and unlawful-imprisonment claims against Blane McCann in his individual capacity shall be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Kohl*, 5 F.3d at 1147 n.1 (when facts presented in complaint fail to state a claim or clearly give rise to immunity, claim should be dismissed under Rule 12(b)(6)).

### ii.  Equal Protection

"'The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.'" *Stevenson v. Blytheville Sch. Dist. 5*, No. 14-3746, ___F.3d___, 2015 WL 5090672, at *12 (8th Cir. Aug. 31, 2015) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted)).  Because Plaintiffs make no factual allegations that Dakota Parsons was treated differently than other similarly situated students, defendant McCann's motion to dismiss Plaintiffs' equal-protection claim must be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### iii.  Civil Conspiracy

Because Plaintiffs' section 1983 claims against McCann for false arrest, unlawful imprisonment, and violation of Parsons' right to equal protection will be dismissed, the civil conspiracy claim based on those underlying claims must also be dismissed. *Hanten*, 183 F.3d at 809 (civil conspiracy claim does not set forth an independent cause of action, but is sustainable only after underlying violations have been established).

### iv.  Abuse of Process (State Law)

The facts alleged in Plaintiffs' amended complaint indicate that McCann's actions—which form the basis for Plaintiffs' abuse-of-process claim against him—were taken within the scope of his employment as Superintendent of Westside Community Schools, making the PSTCA applicable.[15] Because the PSTCA does not waive sovereign immunity for abuse-of-process claims, defendant McCann's motion to dismiss this claim against him will be granted.

### v.  Free Instruction (State Law)

Plaintiffs allege that by refusing to allow Dakota Parsons to attend WHS to earn his diploma after his term of expulsion was completed, McCann violated Neb. Rev. Stat. § 79-283, which provides that if a student is expelled from school during the first term of the school year, the maximum period for which the student may be expelled

---

[15]*See* Neb. Rev. Stat. § 13-903 ("political subdivision" within the meaning of the PSTCA includes school districts; "tort claim" means any claim against political subdivision for money stemming from injury caused by wrongful act of employee of political subdivision "while acting within the scope of his or her office or employment").

39

is for the remainder of the school year, and Article VII, § 1, of the Nebraska Constitution, which provides for "free instruction in the common schools of this state."[16]

The Nebraska Legislature enacted the Student Discipline Act, Neb. Rev. Stat. §§ 79-254 to 79-294 (Westlaw 2015), for the stated purpose of "assur[ing] the protection of all elementary and secondary school students' constitutional right to due process and fundamental fairness within the context of an orderly and effective educational process." Neb. Rev. Stat. § 79-255 (Westlaw 2015). The Act sets forth the types of student conduct that may be grounds for long-term suspension, expulsion, or mandatory reassignment of offending students; notice and hearing procedures; and procedures for appeal to the school board, district court, and state appellate courts pursuant to the Administrative Procedure Act. Neb. Rev. Stat. § 79-292 (Westlaw 2015).

Nebraska's Student Discipline Act states that a "final decision" under the Act is entitled to judicial review in the county district court, but also provides that "[n]othing in the act shall be deemed to prevent resort to other means of review, redress, or relief provided by law." Neb. Rev. Stat. § 79-288 (Westlaw 2015). Counsel have not cited, nor has the court found, any cases interpreting this provision. However, the plain language of the statute would seem to indicate that a "final decision" must first be reached before further review is sought.

――――――――――――――――

[16] Article VII, § 1, of the Nebraska Constitution provides that "[t]he Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." The Nebraska Supreme Court has "not construed this language in the context of student discipline to mean that a fundamental right to education exists in this state. . . . Rather, we have construed the term 'free instruction' in right[-]to[-]education cases as pertinent to the issue of the constitutionality of school financing, including collection of fees, tuition, and taxes." *Kolesnick By & Through Shaw v. Omaha Pub. Sch. Dist.*, 558 N.W.2d 807, 813 (Neb. 1997).

Here, Plaintiffs complain that McCann will not allow Dakota Parsons to return to WHS to finish his diploma, despite the fact that Dakota has finished his term of expulsion. Because Plaintiffs do not allege that Dakota has officially requested re-enrollment in WHS, that defendant McCann has officially denied Dakota permission to do so, and that Dakota has participated in a hearing and has appealed to the school board, I shall dismiss this claim without prejudice for lack of jurisdiction because this claim is not ripe for adjudication. *Missouri Soybean Ass'n v. U.S. E.P.A.*, 289 F.3d 509, 512 (8th Cir. 2002) ("The ripeness doctrine seeks to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."; when suit is not ripe for adjudication, court must dismiss without prejudice for lack of jurisdiction (internal quotation marks and citations omitted)); *Parrish v. Dayton*, 761 F.3d 873, 875-76 (8th Cir. 2014) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks and citations omitted)); *Oil, Chem. & Atomic Workers Int'l Union AFL-CIO v. Gillette Co.*, 905 F.2d 1176, 1177 (8th Cir. 1990) (where employee had not filed claim for benefits with retirement plan and had not been denied benefits, issue regarding source of pension benefits was not ripe for review because if employee applied for and was awarded benefits, issue of entitlement to benefits would be moot).

### c. Westside Community Schools

Plaintiffs bring section 1983 claims for false arrest, unlawful imprisonment, and civil conspiracy against Westside Community Schools. For the same reasons discussed above with regard to Plaintiffs' claims against the City of Omaha and Douglas County, Plaintiffs' allegations are sufficient to draw an inference that Westside Community Schools has a policy of giving school administrators unfettered discretion to act contrary to the determinations of administrative hearing officers who review student disciplinary actions—such as the decision in this case that Parsons be

allowed to return to school after his one-year expulsion—and that this policy causes the violation of students' due process rights.[17] As with the City of Omaha and Douglas County, this is enough to survive a motion to dismiss on Plaintiffs' section 1983 "policy" claim against Westside Community Schools. However, Plaintiffs' "custom" claim against Westside Community Schools must be dismissed because Plaintiffs fail to allege that other students experienced the same denial of due process at the direction of Westside officials.

## III. CONCLUSION

Defendants Omaha Police Department and the Douglas County Attorney's Office are not suable entities and will therefore be dismissed from this case. Plaintiffs' claims against Brenda Beadle, Don Kleine, and Mark Foxall in their official capacities will be dismissed as redundant of their claims against Douglas County. Similarly, all claims against Blane McCann in his official capacity shall be dismissed as redundant of Plaintiffs' claims against Westside Community Schools.

Plaintiffs' new allegations in their amended complaint are sufficient to allege the existence of an unconstitutional policy of the City of Omaha, Douglas County, and Westside Community Schools. Accordingly, I shall deny the motions to dismiss filed

---

[17]In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held that a state must recognize as a property interest a student's legitimate entitlement to a public education and that such a property interest may not be terminated for misconduct without some minimum due process protection. *See also Stevenson*, 2015 WL 5090672, at *11 (once state has established and maintains public school system, state must recognize student's legitimate entitlement to public education as a property interest protected by the Due Process Clause against unfair or mistaken exclusion from the educational process). Here it is alleged that Westside Community Schools' policy resulted in Dakota Parsons' unfair exclusion from the educational process because he was not allowed to return to school after the expulsion period, despite his having completed all necessary requirements.

by the these entities regarding Plaintiffs' section 1983 "policy" claims, but grant the motions to dismiss as to Plaintiffs' "custom" claims.

To the extent Plaintiffs' claims are based on the Fifth Amendment, such claims shall be dismissed because Plaintiffs have not alleged that the federal government or a federal action deprived them of property.

As against defendant Brenda Beadle in her individual capacity, Plaintiffs' section 1983 claims shall be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as follows: false-arrest claim shall be dismissed based upon qualified immunity, unlawful-imprisonment claim and claim for violation of the Eighth Amendment (bail) shall be dismissed based upon absolute immunity, and the civil conspiracy claim shall be dismissed due to the dismissal of the claims upon which alleged conspiracy is based.

Plaintiffs' civil conspiracy claim against Mark Foxall individually must be dismissed because Plaintiffs do not allege that Foxall participated in any aspect of the alleged conspiracy.  With regard to Plaintiffs' section 1983 unlawful-imprisonment claim, Foxall has absolute immunity from Plaintiffs' suit for damages flowing from the fact of Dakota Parsons' incarceration.  Therefore, Foxall will be dismissed from this case in his individual capacity.

The Rule 12(b)(5) motion to dismiss for insufficiency of service of process will be granted with respect to Douglas County.  However, Plaintiffs shall be granted leave to properly serve Douglas County within 20 days of the date of this memorandum and order.

Because Plaintiffs have failed to allege specific facts regarding Douglas County Attorney Don Kleine's personal involvement in, or direct responsibility for, a deprivation of Dakota Parsons' constitutional rights, the motion to dismiss all claims against Kleine individually pursuant to Fed. R. Civ. P. 12(b)(6) will be granted. In addition, defendant Kent Kingston shall be dismissed from this case pursuant to Fed.

43

R. Civ. P. 12(b)(6) due to Plaintiffs' failure to make any factual allegations regarding Kingston's involvement in the events leading to this lawsuit.

Plaintiffs' abuse-of-process claim filed against defendants Douglas County and Brenda Beadle in her individual capacity will be dismissed for failure to comply with the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-926.

Plaintiffs' false-arrest and unlawful-imprisonment claims against defendant Blane McCann in his individual capacity shall be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have not alleged that McCann had the authority to effect an arrest and subsequent imprisonment. Because Plaintiffs make no factual allegations that Dakota Parsons was treated differently than other similarly situated students, defendant McCann's motion to dismiss Plaintiffs' equal-protection claim must be granted pursuant to Fed. R. Civ. P. 12(b)(6). Further, because Plaintiffs' section 1983 claims against McCann for false arrest, unlawful imprisonment, and violation of Parsons' right to equal protection will be dismissed, the civil conspiracy claim based on those underlying claims must also be dismissed. Defendant McCann's motion to dismiss Plaintiffs' state-law abuse-of-process claim will be granted because Nebraska's Political Subdivisions Tort Claims Act does not waive sovereign immunity for such claims. Finally, Plaintiffs' state-law claim brought against McCann pursuant to Neb. Rev. Stat. § 79-283 and Article VII, § 1, of the Nebraska Constitution will be dismissed without prejudice for lack of jurisdiction because this claim is not ripe for adjudication.

By the way, counsel for the plaintiffs would be well advised in the future to refrain from a "scattershot" pleading approach. It detracts from the real issues in the case. Just sayin'.

IT IS ORDERED:

1.   Defendant Omaha Police Department's motion to dismiss (Filing 55) is

granted, and the Omaha Police Department is dismissed from this action as a non-suable entity pursuant to Fed. R. Civ. P. 12(b)(6).

2.      Defendant City of Omaha's motion to dismiss (Filing 55) is granted in part and denied in part as follows:  the motion to dismiss Plaintiffs' section 1983 "custom" claim is granted, and the motion to dismiss Plaintiffs' section 1983 "policy" claim is denied without prejudice to the filing of a properly supported motion for summary judgment.

3.      The motion to dismiss (Filing 60) based on Fed. R. Civ. P. 12(b)(6) filed by Douglas County is granted in part and denied in part as follows:  the motion to dismiss Plaintiffs' section 1983 "custom" claim is granted, and the motion to dismiss Plaintiffs' section 1983 "policy" claim is denied without prejudice to the filing of a properly supported motion for summary judgment.

4.      The motion to dismiss (Filing 60) filed by the Douglas County Attorney's Office is granted, and the Douglas County Attorney's Office is dismissed from this action as a non-suable entity pursuant to Fed. R. Civ. P. 12(b)(6).

5.      The motion to dismiss (Filing 60) filed by Douglas County based on Fed. R. Civ. P. 12(b)(5) is granted; however, Plaintiffs are granted leave to cure the lack of service upon Douglas County by properly serving Douglas County within 20 days of the date of this memorandum and order and submitting proof of service to the court, in the absence of which Plaintiffs' claims against Douglas County shall be dismissed without prejudice.

6.      Plaintiffs' claims against defendants Brenda Beadle, Don Kleine, and Mark Foxall in their official capacities are dismissed as redundant of their claims against Douglas County.

7.      The motion to dismiss (Filing 58) filed by defendant Mark Foxall in his

45

individual capacity is granted, and Foxall is dismissed from this case pursuant to Fed. R. Civ. P. 12(b)(6).

8.     Plaintiffs' Fifth Amendment claims against all parties are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

9.     The motion to dismiss (Filing 62) filed by defendants Don Kleine and Brenda Beadle in their individual capacities is granted, and Kleine and Beadle are dismissed from this case pursuant to Fed. R. Civ. P. 12(b)(6).

10.     The motion to dismiss (Filing 60) Plaintiffs' state-law abuse-of-process claim against defendant Douglas County is granted.

11.     The motion to dismiss (Filing 66) filed by defendant Kent Kingston is granted, and Kent Kingston is dismissed from this case pursuant to Fed. R. Civ. P. 12(b)(6).

12.     Plaintiffs' claims against defendant Blane McCann in his official capacity are dismissed as redundant of their claims against Westside Community Schools.

13.     The motion to dismiss (Filing 66) filed by defendant Blane McCann in his individual capacity is granted pursuant to Fed. R. Civ. P. 12(b)(6) as to Plaintiffs' section 1983 claims for false arrest, unlawful imprisonment, equal protection, and civil conspiracy, and as to Plaintiffs' state-law claim for abuse of process.  The motion to dismiss shall further be granted as to Plaintiffs' state-law claim under Neb. Rev. Stat. § 79-283 and Article VII, § 1, of the Nebraska Constitution, because this claim is not ripe for adjudication; accordingly, this state-law claim is dismissed without prejudice for lack of jurisdiction.

14.     The motion to dismiss (Filing 66) based on Fed. R. Civ. P. 12(b)(6) filed by Westside Community Schools is granted in part and denied in part as follows:  the

46

motion to dismiss Plaintiffs' section 1983 "custom" claim is granted, and the motion to dismiss Plaintiffs' section 1983 "policy" claim is denied without prejudice to the filing of a properly supported motion for summary judgment;

15.    The remaining claims and parties in this action are:

(a)    Section 1983 "policy" claim against defendant City of Omaha regarding its alleged policy of allowing participants in its Young Adult Court program to be arrested and held without bond and without a showing of probable cause at the unfettered discretion of the county attorney.

(b)    Section 1983 "policy" claim against defendant Douglas County (providing that Plaintiffs cure the lack of service upon Douglas County) for its alleged policy of encouraging and conspiring to effectuate searches, seizures, and arrests of Young Adult Court participants without probable cause and imprisoning them for an excessive amount of time without bond and without being advised of the charges against them.

(c)    Section 1983 "policy" claim against defendant Westside Community Schools for its alleged policy of giving school administrators unfettered discretion to act contrary to the determinations of administrative hearing officers who review student disciplinary actions.

(d)    Section 1983 claims against John Does 1-15 (police officers) for false arrest, wrongful search and seizure, and civil conspiracy.

DATED this 30th day of September, 2015.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.